UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SABRINA T.,[1]                              Case No. 1:21-cv-28
          Plaintiff,                        Cole, J.
                                            Litkovitz, M.J.
     vs.

COMMISSIONER OF                             REPORT AND
SOCIAL SECURITY,                            RECOMMENDATION
          Defendant.

     Plaintiff Sabrina T. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the

Commissioner's response (Doc. 17), and plaintiff's reply (Doc. 20).

**I. Procedural Background**

     Plaintiff filed applications for DIB and SSI in 2011, alleging disability since May 24,

2011, due to high blood pressure, knee problems (torn meniscus), depression, carpal tunnel, and

back problems. (Tr. 380). The applications were denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative

law judge (ALJ) Kristen King. Plaintiff and a vocational expert (VE) appeared and testified at

the ALJ hearing on March 21, 2013. (Tr. 74-109). On May 3, 2013, ALJ King issued a decision

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

denying plaintiff's DIB and SSI applications.  (Tr. 164-77).  On plaintiff's request for review, the Appeals Council remanded her case to ALJ King.  (Tr. 183-85).

Plaintiff and a VE appeared and testified before ALJ King at the remand hearing on May 15, 2015.  (Tr. 38-73).  On November 19, 2015, ALJ King issued a decision denying plaintiff's DIB and SSI applications.  (Tr. 15-31).  This time, the Appeals Council denied plaintiff's request for review, making the November 19, 2015 decision the final decision of the Commissioner.  (Tr. 1-6).

Plaintiff filed an appeal with this Court, and the undersigned issued a Report and Recommendation that ALJ King's decision be reversed and remanded for further proceedings, which the District Judge adopted.  (Tr. 1880-81).[2]  The District Judge ordered the ALJ on remand to: (1) "re-weigh the medical opinion evidence in accordance with the [undersigned's] Report and Recommendation"; (2) "reassess [p]laintiff's residual functional capacity, giving appropriate weight to the opinion of Dr. Barnett, including an explanation on the record for the weight afforded to her opinion"; (3) "reassess whether plaintiff's mental impairments satisfy Listing 12.04"; and (4) obtain "further medical and vocational evidence as warranted. . . ."  (*Id.*).

Following judicial remand, a hearing was held on December 6, 2019 before ALJ Cristen Meadows—a new ALJ pursuant to an order of the Appeals Council (Tr. 1883-86).[3]  (Tr. 1705-51).  Plaintiff and a VE appeared and testified at the hearing.  (*Id.*).  On January 3, 2020, ALJ

---

[2] The Court does not cite any online legal research database in order to comply with General Order 22-01.
[3] Between this ALJ hearing and the May 15, 2015 hearing, plaintiff filed subsequent applications for benefits in March and April 2017.  (Tr. 2018-25).  These claims were consolidated with plaintiff's prior claims and adjudicated at the December 2019 remand hearing consistent with 20 C.F.R. §§ 404.952, 416.1452 and the Social Security Administration's Hearings, Appeals and Litigation Law (HALLEX) manual I-1-10-10.  (*See* Tr. 1666, 1885).  The Appeals Council directed ALJ Meadows to apply the rules in effect at the time of plaintiff's initial claims to the consolidated claims.  *See id.* (citing HALLEX I-5-3-30).

Meadows issued a decision denying plaintiff's DIB and SSI applications. (Tr. 1662-90). The Appeals Council denied plaintiff's request for review, making the January 3, 2020 decision the final decision of the Commissioner. (Tr. 1655-58).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

ALJ Meadows applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> [Plaintiff] met the insured status requirements of the Social Security Act through September 30, 2016.
>
> [Plaintiff] has not engaged in substantial gainful activity since May 24, 2011, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> [Plaintiff] has the following severe impairments: rheumatoid arthritis; bilateral carpal tunnel syndrome; degenerative joint disease of the bilateral knees; degenerative disc disease of the lumbar spine; obstructive sleep apnea; asthma; chronic pain syndrome; hypertension; obesity (although [plaintiff] is no longer currently obese); a depressive disorder; and a personality disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

4

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

After careful consideration of the entire record, [the ALJ found] that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: [plaintiff] could occasionally climb ramps or stairs, balance, stoop, kneel, and crouch; however, she should never crawl or climb ladders, ropes, and scaffolds. [Plaintiff] is limited to frequent handling and fingering bilaterally, as well as occasional overhead reaching with the bilateral upper extremities. She should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. [Plaintiff] should avoid all exposure to hazards of unprotected heights or dangerous moving machinery. She should not perform commercial driving. Further, [plaintiff] is limited to low stress jobs, defined as jobs with only occasional decision making required and with only occasional changes in the work setting or duties, where changes are explained in advance. She requires a setting that does not require strict production quotas or a sustained fast pace. [Plaintiff] could not perform constant production rate pace work, such as an automated assembly line, and instead tasks should be goal-oriented. She could tolerate occasional interaction with co-workers and supervisors, but she could not perform joint tasks and there should be no over-the-shoulder supervision. She could not perform tasks that involve mediating disputes, persuading others, or conflict resolution. Finally, [plaintiff] could never interact with the general public.

[Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[4]

[Plaintiff] was born [in] . . . 1970 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[4] Plaintiff's past relevant work was as a child monitor, bus driver, and nurse assistant, which are all medium, semi-skilled jobs. (Tr. 1687-88, 1745).

Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[5]

[Plaintiff] has not been under a disability, as defined in the Social Security Act, from May 23, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 1668-89).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[5]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of unskilled, light jobs in the national economy, such as merchandise marker (304,000 jobs), cleaner housekeeping (134,000 jobs), and shelving clerk (16,000 jobs); along with unskilled, sedentary jobs in the national economy, such as document preparer (46,000 jobs), assembler (25,000 jobs), and inspector (11,000 jobs).  (Tr. 1689, 1747).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors[6]

On appeal, plaintiff raises two assignments of error: (1) ALJ Meadows improperly rejected the treating source opinions of VA hospital psychiatrist Jalynn Barnett, M.D.; and (2) ALJ Meadows erred at step three of the sequential evaluation process by determining that plaintiff's mental impairments did not meet Listing 12.04.  Plaintiff captions her first argument as relating to ALJ Meadows' assessment of all of the medical opinions of record.  (Doc. 11 at PAGEID 4351).  In fact, however, plaintiff makes only cursory reference to the opinions of the state agency file reviewers as a point of comparison with Dr. Barnett—noting that their opinions were assigned more weight notwithstanding a lack of treating or examining relationship with plaintiff.  (*Id.* at PAGEID 4354).  The Court therefore deems arguments regarding the other medical opinions in the record waived.  *See Watts*, 2017 WL 430733, at *11.

---

[6] Plaintiff does not argue that the ALJ erred in evaluating her physical impairments; therefore, plaintiff has waived any challenges regarding her physical impairments.  *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017) (argument waived where plaintiff did not "develop it legally or factually in the Statement of Errors"), *report and recommendation adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017).

1. <u>Dr. Barnett</u>

a. *Opinions and ALJ Meadows' assessment*

Dr. Barnett provided five opinions on plaintiff's mental impairments. On March 18, 2013, Dr. Barnett listed plaintiff's diagnoses as a mood disorder, rule out bipolar disorder, and bereavement. Dr. Barnett assessed a Global Assessment of Functioning[7] (GAF) score of 40, with the highest in the year prior being 49. (Tr. 1032). Dr. Barnett noted clinical findings of extreme mood lability, low threshold for tearfulness, poor coping, homicidal fantasies, depressed/anxious mood, irritability, and impaired concentration. (*Id.*). Dr. Barnett opined that plaintiff was either "unable to meet competitive standards" or lacked any "useful ability to function" in the categories of maintaining regular attendance and being punctual; making simple work-related decisions; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; working in coordination with or proximity to others without being unduly

---

[7] As explained by the court in *Mosley v. Comm'r of Soc. Sec.*:

> GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM–IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM–V") (noting recommendations "that the GAF be dropped from [DSM–V] for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice"). As set forth in the DSM–IV, however, a GAF of 31–40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*, . . . avoids friends, neglects family, and is unable to work)." DSM–IV at 34. A GAF score of 41–50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id.*

No. 3:14-cv-278, 2015 WL 6857852, at *4 n.4 (S.D. Ohio Sept. 14, 2015).

distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 1034). Dr. Barnett also found that plaintiff had "extreme" difficulties in maintaining social functioning and maintaining concentration, persistence or pace. (Tr. 1035). Dr. Barnett concluded that plaintiff would miss work more than four days per month. (Tr. 1036).

On April 4, 2015, Dr. Barnett listed plaintiff's diagnosis as depressive disorder and assessed a GAF score of 42, with the highest in the year prior at 45. (Tr. 1415). Dr. Barnett noted that plaintiff had zero to mild improvement despite taking Risperidone, Lamotrigine and Diphenhydramine. (*Id.*). Dr. Barnett noted clinical findings of irritable/anxious affect with minimal range; excessive psychomotor agitation; hopelessness with passive suicidal ideation and occasional homicidal ideation; paranoia; and limited insight and judgement. (Tr. 1415). Dr. Barnett opined that plaintiff's ability to maintain attention and concentration was moderately severely limited and her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was severely limited. (Tr. 1416). Dr. Barnett further opined that plaintiff's abilities to interact with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without exhibiting behavioral extremes were severely limited. (Tr. 1417). Dr. Barnett estimated that plaintiff would be absent from work more than four days per month. (Tr. 1418). Dr. Barnett noted that plaintiff suffered from "intrinsically low frustration tolerance and a high baseline level of irritability" that "made her family and personal life more tumultuous and [] made it more difficult to maintain appropriate interpersonal dynamics in work situations."

9

(Tr. 1419).  Dr. Barnett concluded that plaintiff's depressive symptoms had recently displayed a cognitive impact, with more consistent concentration and short-term memory deficits.  (Tr. 1419).

On April 25, 2017, Dr. Barnett listed diagnoses of other recurrent depressive disorder, adjustment disorder with mixed anxiety and depressed mood, and chronic pain syndrome.  (Tr. 2467).  Dr. Barnett recorded both a current and highest GAF score in the year prior of 40.  (*Id.*).  Dr. Barnett found that plaintiff had only minimal improvement with treatment.  (*Id.*).  Dr. Barnett noted clinical findings of appearance of pain/grimacing/swollen hands, loss of hair, guarded and frustrated mood, minimal to severely constricted range, mood liability, hopelessness, homicidal ideation, and poor insight and judgment.  (*Id.*).  Dr. Barnett opined that plaintiff's abilities to maintain attention and concentration for extended periods, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting were moderately severely limited.  (Tr. 2468-69).  Dr. Barnett also opined that plaintiff's abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and accept instructions and respond appropriately to criticism from supervisors were severely limited.  (*Id.*).  Dr. Barnett found that plaintiff would have severe difficulties in maintaining social functioning and concentration, persistence or pace.  (Tr. 2469).  Dr. Barnett concluded that plaintiff would be absent from work more than four days per month.  (Tr. 2470).

On August 12, 2018, Dr. Barnett noted plaintiff's diagnosis as other recurrent depressive disorder. (Tr. 3399). Dr. Barnett noted a current GAF score of 41, with the highest in the year prior at 42. (*Id.*). Dr. Barnett listed clinical findings of intermittent paucity of speech, slowness to respond, some labile mood with heightened frustrations, and a history of homicidal ideation/violent fantasies. (*Id.*). Dr. Barnett opined that plaintiff was "unable to meet competitive standards" in the categories of maintaining regular attendance and being punctual within customary, usually strict tolerance; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; dealing with normal work stress; and interacting appropriately with the general public. (Tr. 3401-02). Dr. Barnett further opined that plaintiff had "marked" difficulties in maintaining social functioning and concentration, persistence or pace. (Tr. 3402). Like in April 2015, Dr. Barnett noted that plaintiff had continuing issues with "lowered frustration tolerance" but now characterized plaintiff's mood lability as only "intermittent." (Tr. 3402). Dr. Barnett concluded plaintiff would be absent from work more than four days per month. (Tr. 3403).

On September 15, 2019, Dr. Barnett noted diagnoses of depressive disorder and chronic pain syndrome. (Tr. 4041). She recorded clinical findings of frustrated affect, history of paucity of speech, and history of expressed hopelessness and anger—including homicidal thoughts and irritability. (Tr. 4041). Dr. Barnett opined that plaintiff had "no useful ability" to maintain

regular attendance and punctuality within customary, usually strict tolerance.  (Tr. 4043).  She

further opined that plaintiff was "unable to meet competitive standards" in the categories of

sustaining an ordinary routine without special supervision, completing a normal workday and

workweek without interruptions from psychologically based symptoms, and performing at a

consistent pace without an unreasonable number and length of rest periods.  (*Id.*).  Dr. Barnett

noted that plaintiff would be absent from work more than four days per month.  (Tr. 4045).

ALJ Meadows assessed Dr. Barnett's five opinions as follows:

In this case, I find Dr. Barnett's opinions do not deserve controlling weight, or
even some weight, because among other things, they are not consistent with her
own treatment notes or the other evidence of record.  Instead, I give the opinions
little weight because they are not consistent with or supported by the evidence of
record, including her own treatment notes, as detailed above.  For instance, in her
first opinion Dr. Barnett described homicidal fantasies, but her progress notes
confirm that [plaintiff] was merely expressing anger towards her ex-spouse.  See
Exhibit 17F/p63-64.  [Plaintiff] acknowledged that she would never act on her
thought.  Id.  Moreover, after this isolated incident, the record contains no other
ongoing allegations from [plaintiff] regarding homicidal or suicidal ideations.
Yet, in all subsequent opinions, Dr. Barnett continued to note such
ideations/fantasies, despite failing to document any ongoing issues in her
underlying treatment records.

Likewise, Dr. Barnett's opinions refer to excessive psychomotor agitation, limited
insight/judgment, a labile mood, and poor frustration tolerance.  Conversely, a
review of her progress notes make no mention of ongoing psychomotor agitation.
Furthermore, as discussed more fully above, Dr. Barnett regularly documented
normal judgment and insight.  Dr. Barnett also routinely noted normal thought
content, a less labile or no labile mood, no paucity of speech, and only moderate
levels of frustration.  In Dr. Barnett's April 2015 opinion, she portrayed significant
symptomology and nominal functional abilities, but when contacted by
Dr. Barnett during this time, [plaintiff] denied any imminent issues.  See Exhibit
26F/p110.  In fact, she failed to show for her next scheduled appointment with Dr.
Barnett.  Id.

In that regard, in her third opinion in April of 2017, Dr. Barnett indicated that
[plaintiff] had experienced three episodes of decompensation in the previous

twelve months.  See Exhibit 32F/p4.  Yet, when she penned her assessment, she had only recently started treating [plaintiff] again after nearly nineteen months.  There is no reasonable explanation for such an opinion unless Dr. Barnett is relying entirely on the [plaintiff]'s subjective complaints, which were shown unsupported by the record, as discussed above.

Also, Dr. Barnett's progress notes confirm that [plaintiff] sought only intermittent treatment, she did not pursue counseling, and that she did not take any anti-depressants at times.  See Exhibit 62F/p28.  [Plaintiff] also testified that she has never been psychiatrically hospitalized.  Based on my review of the record, Dr. Barnett has seen [plaintiff] just seven times since September of 2015.  That averages to less than two visits per year.  In the absence of consistent care, it is reasonable to question the objective reliability of Dr. Barnett's opinions.  Nonetheless, I do note that [plaintiff] at least has a longitudinal history with Dr. Barnett, as she started treatment with her in 2011.  However, if [plaintiff]'s symptoms and limitations were as severe as alleged, I would expect to see more frequent treatment and ongoing use of anti-depressant, or other medication, neither of which is documented.  Again, when given the opportunity to comment on these gaps in treatment at the hearing, [plaintiff] instead denied any gaps in treatment.  [Plaintiff] also indicated that there is "no reason" why she has not seen a counselor or therapist.  Thus, while all of Dr. Barnett's opinions were fully considered, I find they garner little weight because overall they are inconsistent with [plaintiff]'s infrequent, routine, and conservative treatment history.  Additionally, Dr. Barnett's own treatment records do not support the severe limitations listed in the opinions.

(Tr. 1686-87).

### b.  *Applicable law*

A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]"  20 C.F.R. §

404.1527(c)(2)[8]; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).[9]

If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply

the following factors in determining what weight to give the opinion: the length of the treatment

relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

and the specialization of the treating source. *Wilson*, 378 F.3d at 544. *See also Blakley*, 581

F.3d at 408 ("Treating source medical opinions [that are not accorded controlling weight] are

still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. §

404.1527(c)) (quoting SSR 96-2p, 1996 WL 374188, at *4).[10]  In addition, an ALJ must "give

good reasons in [the] notice of determination or decision for the weight [given to the claimant's]

treating source's medical opinion."  20 C.F.R. § 404.1527(c)(2).  The ALJ's reasons must be

supported by the evidence in the case record and must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight. *Gayheart*, 710 F.3d at 376 (quoting SSR 96-2p, 1996

WL 374188, at *5).  This requirement serves a two-fold purpose: (1) it helps a claimant to

---

[8] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively."  *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)).  The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Report and Recommendation.
[9] As a general matter, new regulations apply to the evaluation of medical evidence for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819.  In this case, however, the Court applies the prior regulations to plaintiff's consolidated claims.  *See supra* n.2.
[10] SSR 96-2p was rescinded effective March 27, 2017.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5845.  Because the Court applies the prior rules in this case, however, SSR 96-2p remains applicable.  *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 437 n.9 (6th Cir. 2018).

14

understand the disposition of h[er] case, especially "where a claimant knows that h[er] physician has deemed h[er] disabled," and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544.

> c. *Analysis*

Plaintiff argues that Dr. Barnett's opinions that she would miss at least four days of work per month and would have significant limitations in concentration, persistence, or pace were entitled to controlling weight and demonstrate that she was unable to maintain employment. Though not raised in her first assignment of error, plaintiff relatedly argues in connection with her second assignment of error that ALJ Meadows improperly weighed Dr. Barnett's opinions that plaintiff either (1) had extreme, marked or moderately severe difficulties; (2) was unable to meet competitive standards; or (3) was unable to function in the areas of concentration, persistence, or pace *and* interacting with others.  (*See* Doc. 11 at PAGEID 4356-57, referring to Tr. 1035 (March 2013 opinion); Tr. 1417 (April 2015 opinion); Tr. 3401-02 (August 2018 opinion); and Tr. 4043-44 (September 2019 opinion)).[11]

Plaintiff argues that these opinions are supported by Dr. Barnett's own treatment notes and consistent with the findings of consultative examiner George Lester, Psy.D., who examined plaintiff in September 2011.  Plaintiff also argues that ALJ Meadows did not give good reasons for assigning greater weight to the opinions of the state agency file reviewers than to Dr. Barnett's opinions, given plaintiff's long treating relationship with Dr. Barnett.[12]  The

---

[11] Plaintiff's arguments are limited to Dr. Barnett's opinions that plaintiff would miss four days of work per month and had extreme limitations in social functioning and maintaining concentration, persistence, or pace.  (Doc. 11 at PAGEID 4354 and 4356-57).  Any arguments related to ALJ Meadows' treatment of any other aspect of Dr. Barnett's opinions are waived.  *See Watts*, 2017 WL 430733, at *11

[12] The Commissioner concedes that the ALJ erroneously found inconsistency between Dr. Barnett's opinions and

Commissioner responds that ALJ Meadows' conclusion that Dr. Barnett's opinions were not entitled to controlling weight is supported by substantial evidence, and ALJ Meadows articulated good reasons for the weight that she ultimately assigned to Dr. Barnett's opinions.

*1. Controlling weight*

ALJ Meadows' decision to not afford controlling weight to Dr. Barnett's opinions is based on substantial evidence.  Plaintiff points to a number of Dr. Barnett's treatment notes between 2011 and 2019 reflecting symptoms of feeling depressed, feeling overwhelmed, trouble with agitation, thoughts of homicide, difficulty answering questions, low energy, crying spells, paucity of speech, and difficulty with concentration as supporting Dr. Barnett's opinions.  These symptoms are indeed recorded in Dr. Barnett's notes—particularly in the history of present illness (HPI) sections; though the notes do not reflect whether plaintiff experienced each symptom, or the same degree of symptoms, at each visit.  (*See, e.g.,* Tr. 586-87, 749, 754-55, 940-41, 972-73, 988, 998, 1005, 1019, 1215-16, 1246, 1260-61, 1332-33, 1349-50, 1388-89, 1393-94, 1474-75, 1633-34, 2565, 3258-59, 3441-42, 3460, 4081, and 4128-29, throughout which the HPI sections are often identical).  Plaintiff also cites observations by Dr. Barnett of plaintiff's hesitancy to speak, dysthymia, irritability, anxiousness, and frustrated and labile mood.  (*See, e.g.*, Tr. 586-87, 755, 941, 973, 988, 999, 1005, 1216, 1247, 1261, 1333, 1350, 1389, 1394, 1475, 1634, 2552, 2565, 3259, 3442, 3461, 3911, 4082, and 4129).

Nevertheless, ALJ Meadows engaged in a detailed discussion of plaintiff's treatment with Dr. Barnett, during which she noted numerous instances where Dr. Barnett's own clinical

---

treatments notes regarding homicidal ideations, so the Court does not discuss this argument.  (Doc. 17 at PAGEID 4463).

observations did not support the extent of limitations endorsed in her opinions.  (*See* Tr. 1679-81).  ALJ Meadows noted that in 2011, plaintiff's symptoms appeared more closely linked with social stressors as opposed to clinical deficits, and her treatment was conservative.  (*See, e.g.*, Tr. 1679, referring to Tr. 1019 (plaintiff described the death of her mother, the death of her nephew, a job loss, financial issues, her son's traumatic injury and behavioral issues, and her sister's cancer diagnosis; but plaintiff did not demonstrate significant clinical findings on examination beyond "frustrated mood")).  ALJ Meadows noted that in 2012, notwithstanding being "extremely overwhelmed by psychosocial stressors" (*see id., e.g.*, referring to Tr. 972 (increased situational stress, including a home fire and break-in)), plaintiff's presentation was not extraordinary.  (*Id.*, referring to Tr. 959 (plaintiff reported socializing with friends and displayed "euphoric and bright mood," good judgment and insight, and logical thought process); Tr. 988 (goal-directed thoughts and intact memory), Tr. 998-99 (plaintiff denied racing thoughts despite psychosocial stressors of her sisters' health issues)).

ALJ Meadows acknowledged that plaintiff displayed more significant clinical abnormalities in 2013, but she also observed that they appeared more closely linked to issues with her children's father.  (*Id.*, referring to Tr. 940-41, 1388).  ALJ Meadows also pointed out that Dr. Barnett observed fewer clinical abnormalities once this particular stressor resolved.  (*Id.*, referring to Tr. 1333 (noting only mild irritability and less labile mood), Tr. 1261 (same)).  ALJ Meadows noted a similar pattern in 2014 and 2015: plaintiff reported situational stressors but did not exhibit significant clinical abnormalities.  (*Id.*, referring to Tr. 1246-47 (plaintiff's caretaking was stressful, but she exhibited only moderate irritability and some hesitancy to speak); Tr. 1680,

referring to Tr. 1474-75 (plaintiff was dealing with loss of her home and sister but exhibited only mild irritation and tearfulness)). ALJ Meadows noted that in July of 2015, plaintiff had stopped taking a prescribed antidepressant (Fluoxetine), yet Dr. Barnett did not document any corresponding increase in clinical manifestations, and she recommended eight-week medication follow-up. (Tr. 1680, referring to Tr. 1633-64.) ALJ Meadows noted little change in the treatment record from September 2015, except that Dr. Barnett actually increased the duration between appointments from eight weeks to eight-to-ten weeks. (*Id.*, referring to Tr. 2563.) As it relates to Dr. Barnett's April 2015 opinion in particular, ALJ Meadows noted that Dr. Barrett's own record dated only a month later reflects that plaintiff did not show for a scheduled appointment and reported over the phone that she was experiencing "[n]o imminent issues." (Tr. 1687, referring to Tr. 1654.)

ALJ Meadows noted that plaintiff reestablished care with Dr. Barnett in March 2017 after an approximate 18-month gap in treatment due to increased stress related to a revelation of familial abuse. (Tr. 1680, referring to 2564-65). ALJ Meadows noted that, shortly after reestablishing care and notwithstanding the significant gap in mental-health treatment, plaintiff exhibited normal eye contact, speech, behavior, and thought process and did not endorse significant mental-health symptoms. (*Id.*, referring to Tr. 3275 (treatment with VA hospital staff)). ALJ Meadows noted the recurring pattern of situational stressors without significant clinical observations in July 2017, February 2018, June 2018, and January 2019—notwithstanding significant gaps in treatment between plaintiff's July 2017 and February 2018 visits and between her June 2018 and January 2019 visits. (Tr. 1680-81, referring to Tr. 3258-60

18

(plaintiff's nephew was murdered, her daughter was exhibiting behavioral issues, and she was charged with the care of her own two children and two non-biological children; but she exhibited only anger and hopelessness related to her family issues and moderate frustration, and she remained on an eight-week follow-up schedule); Tr. 3460-61 (same); Tr. 3442 (plaintiff displayed moderate frustration and anger related to family stressors; Dr. Barnett recommended eight-to-ten-week follow-up); Tr. 3911 (same)).

ALJ Meadows noted that Dr. Barnett recorded milder symptoms in July 2019, notwithstanding another significant gap in treatment (approximately six months).  (Tr. 1681, referring to Tr. 4128-30 (plaintiff reported feeling slightly less consumed with anger and less intense symptoms, and Dr. Barnett recorded similar clinical observations to the most recent prior visits)).  ALJ Meadows noted that a depression screening conducted by the VA hospital the following month, August 2019, was negative.  (*Id.*, referring to Tr. 4096).  ALJ Meadows noted that by September 2019, Dr. Barnett's own treatment records were consistent with this depression screening—Dr. Barnett noting that plaintiff "appeared to be at baseline with depressive symptoms that are exacerbated intermittently with psychosocial stressors" and had self-discontinued all medications (though plaintiff agreed to continue Fluoxetine).  (*Id.*, referring to Tr. 4082).

ALJ Meadows also noted that Dr. Barnett's treatment notes did not generally reflect any difficulties interacting with medical providers and staff.  (*Id.*).  ALJ Meadows noted that plaintiff's reported temper and anger issues appeared mostly tied to the particular people in her life causing situational stress.  (Tr. 1679-1681, referring, *e.g.*, to Tr. 940-41 and 1261 (noting

mental health improvement with the resolution of psychosocial stressors) and Tr. 3259

(plaintiff's anger towards her sister and nephew was related to particular behaviors)). ALJ

Meadows noted that plaintiff reported going out with friends (Tr. 1679, referring to Tr. 959) and

regular and frequent interactions with her extended family (Tr. 1679-81, referring, *e.g.*, to Tr.

998 (caring for her two sisters); Tr. 3460 (caring for a young niece and nephew and their

physical and mental health appointments); and Tr. 3911 (same)). ALJ Meadows noted that

plaintiff reported to Dr. Lester that she had never had friends (suggesting that this condition was

not necessarily related to mental health impairments), kept in touch with family, and did not

report issues with authority figures or co-workers on her Function Report. (Tr. 1682, referring to

Tr. 548 and 2069).

Plaintiff also argues, in particular, that ALJ Meadows incorrectly concluded that Dr.

Barnett's statements regarding plaintiff's excessive psychomotor agitation (*see* Tr. 1415 (April

2015 opinion)) and limited insight/judgment (*see* Tr. 1415, 2467 (April 2015 and April 2017

opinions)) were not supported by Dr. Barnett's treatment notes. (*See* Tr. 1686). Plaintiff argues

that although Dr. Barnett's notes "completely fail to specifically address insight/judgment or

psychomotor retardation/agitation[,]" ALJ Meadows should have "gleaned from Dr. Barnett's

records" that observations of paucity of speech and plaintiff's reports of impaired cognitive

function supported these statements in Dr. Barnett's opinions. (Doc. 11 at PAGEID 4354). ALJ

Meadows, however, supported her conclusion otherwise with a thorough discussion of Dr.

Barnett's treatment records suggesting that plaintiff did *not* have psychomotor issues. (*See, e.g.*,

Tr. 1679, referring to Tr. 959 (good judgment and insight, thought process logical and goal-

directed, no evidence of thought disorder); Tr. 988 (little/no paucity of speech, goal-directed thoughts, intact memory, no racing thoughts); Tr. 999 (same); Tr. 1247 (little/no paucity of speech, goal-directed thoughts, memory not tested but no problems with history, no racing thoughts); Tr. 1475 (same); Tr. 3911 (same); Tr. 4130 (same)).

In addition, other medical records support ALJ Meadows' conclusion that plaintiff did not experience psychomotor agitation.  (*See* Tr. 545 (Dr. Lester did not clinically observe "psychomotor retardation or agitation"); Tr. 2577 (VA mental health intake form reflecting the following categories as within normal limits: psychomotor, behavior, speech, and thought quality and content); Tr. 3275 (VA pain treatment plan note reflecting the following categories as within normal limits: motor, speech, speech content, and thought process)).  *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) ("Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council.") (citation omitted).

Plaintiff also argues that ALJ Meadows should not have found Dr. Barnett's specific statement that plaintiff had suffered three episodes of decompensation within a twelve-month period to be unsupported by the record.  (*See* Tr. 1687, referring to Tr. 2469 (April 2017 opinion)).  The Commissioner argues that this opinion came only one month after plaintiff reestablished care with Dr. Barnett following an approximate 18-month gap; therefore, Dr. Barnett's opinion must necessarily be based solely on plaintiff's subjective reports.  *See Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to

the protections of the good reasons rule.") (citation omitted). Plaintiff responds by pointing to three records that she argues demonstrate that periods of decompensation are what spurred her back into treatment. (*See* Tr. 2574-79, 575, 2603). The Court has examined these records, however, and none suggest "active decompensation." (Doc. 20 at PAGEID 4482). Rather, the records reflect situational stressors (*see, e.g.*, Tr. 2575) and, in fact, contain plaintiff's comment that she was "just angry" and was not experiencing other mental health symptoms. (Tr. 2577).

Plaintiff also argues that ALJ Meadows failed to consider the consistency of Dr. Barnett's opinions with clinical observations made by Dr. Lester in 2011. On mental status examination, plaintiff exhibited adequate grooming and hygiene and fair to poor eye contact. (Tr. 544-45). Plaintiff did not smile during the interview; she was sometimes cooperative and pleasant and other times very quiet and less cooperative. (Tr. 545, 548). Dr. Lester found that plaintiff had sufficient insight and judgment but was in the low-to-average range of cognitive functioning. (Tr. 547). Dr. Lester diagnosed plaintiff with a mood disorder and personality disorder. (Tr. 547). He assigned plaintiff a GAF score of 50. (Tr. 548). Dr. Lester noted that plaintiff "subjectively report[ed] difficulty with concentration" and her pace and persistence varied with her mood. (*Id.*). As related to coworkers, Dr. Lester noted that plaintiff "subjectively report[ed] difficulty with temper control" and reported violence and arguments. (*Id.*). Plaintiff also reported that she did not currently or ever have friends. (*Id.*). Dr. Lester also noted, however, that plaintiff did not report any history of problems with coworkers or supervisors; though plaintiff reported temper issues, crying spells, and impulsivity. (*Id.*).

22

Dr. Lester's examination does not alter the Court's conclusion that ALJ Meadows' decision to afford Dr. Barnett's opinions less than controlling weight was based on substantial evidence.  ALJ Meadows considered Dr. Lester's opinion.  (Tr. 1678).  Notwithstanding a brief period of unresponsiveness during the examination, plaintiff was cooperative at the beginning and end and did not exhibit any concentration issues or interpersonal issues.  (Tr. 546-48).  To the extent that Dr. Lester's consultative examination findings are consistent with some of Dr. Barnett's findings on examination, it is primarily consistent with plaintiff's subjective reports of symptoms, such as crying spells and difficulty concentrating.  (*See* Tr. 548).  *Cf. Mitchell*, 330 F. App'x at 569.  ALJ Meadows concluded that Dr. Lester did not offer an opinion on specific functional limitations or an opinion based on anything other than subjective complaints.  (Tr. 1678, 1685).  The Court agrees that Dr. Lester does not offer a clear opinion on plaintiff's functional abilities, let alone one that is consistent with any of Dr. Barnett's opinions.

ALJ Meadows also discussed plaintiff's ability to maintain concentration, persistence, or pace.  (Tr. 1682).  ALJ Meadows noted a lack of objective evidence in the record in this area—such as related prescribed medication or abnormal thought processes.  (*Id.*).  As discussed above, paucity of speech was sometimes noted but often not present.  (*See, e.g.*, Tr. 988, 1247, 3911, and 4130).  ALJ Meadows also noted that plaintiff's maintenance of appointments for the children in her custody, while not determinative, demonstrated capabilities in this functional area that were inconsistent with more severe restrictions.  (*Id.*).

In sum, ALJ Meadows carefully considered Dr. Barnett's opinions regarding plaintiff's absenteeism; ability to maintain concentration, persistence, or pace; and social functioning.  ALJ

Meadows' decision that these opinions were not entitled to controlling weight because they were not well-supported by or consistent with her own treatment notes, Dr. Lester's consultative examination, or the record as a whole is supported by substantial evidence.

2. *"Good reasons"*

ALJ Meadows also provided good reasons for the weight that she assigned to Dr. Barnett's opinions. Plaintiff argues that ALJ Meadows incorrectly tallied the number of plaintiff's visits with Dr. Barnett since September 2015 as averaging less than two visits per year (*See* Tr. 1687) and erred by assigning greater weight to the opinions of the non-treating, non-examining state agency file reviewers. (*See* Tr. 1684-85). Even without addressing them one-by-one, however, ALJ Meadows' decision reflects consideration of the 20 C.F.R. § 404.1527(c) factors. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) ("exhaustive factor-by-factor" analysis not required where the ALJ's decision provides sufficiently clear good reasons for the weight assigned to the treating physician's opinion).

ALJ Meadows acknowledged plaintiff's long history of treatment with Dr. Barnett but also that it grew less frequent in recent years and was characterized by several long gaps. (Tr. 1679-81 and 1687). *See* 20 C.F.R. § 404.1527(c)(2)(i); *Malicoat v. Comm'r of Soc. Sec.*, No. 1:17-cv-811, 2019 WL 1305861, at *2 (S.D. Ohio Mar. 22, 2019) (the ALJ may consider gaps in treatment against the plaintiff unless treatment is unaffordable or unavailable) (citing *Hale v. Sec'y H.H.S.*, 816 F.2d 1078, 1082 (6th Cir. 1987) and *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990)). ALJ Meadows cited plaintiff's testimony that there was "no reason" why she did not follow through with counseling or therapy recommendations and denied (as opposed to

taking the opportunity to explain) gaps in her mental health treatment.  (Tr. 1673, 1678, and 1687, referring to Tr. 1742-43).

ALJ Meadows considered the nature and extent of the treatment relationship between plaintiff and Dr. Barnett, including the facts that plaintiff saw Dr. Barnett for medication management (*see* Tr. 1415, 2467, 3399, 4041), though plaintiff sometimes self-discontinued medications and was not interested in repeated recommendations to pursue further therapy.  (*See* Tr. 1679-80, referring to Tr. 1215-16 (reflecting self-cessation of prescribed psychiatric medications and a lack of interest in individual therapy); Tr. 1474-75 (same); Tr. 1633-34 (same); Tr. 3911-12 (same)).  *See* 20 C.F.R. § 404.1527(c)(2)(ii).

The Court has already summarized ALJ Meadows' thorough discussion of whether Dr. Barnett's opinions were supported by her own treatment records.  *See* 20 C.F.R. § 404.1527(c)(3).  In addition, ALJ Meadows explained that the medical record as a whole was inconsistent with the severity of limitation endorsed in Dr. Barnett's opinions.  ALJ Meadows referred to plaintiff's infrequent treatment (*see, e.g.*, Tr. 1687, referring to Tr. 4081 (September 2019 record in which Dr. Barnett characterizes her treatment of plaintiff as "intermittent[]"); the routine nature of plaintiff's treatment (*see, e.g.,* Tr. 1679-80, referring to Tr. 1020 (medication and five-week follow-up in October 2011), Tr. 2563 (same medications and eight-to-ten-week follow-up in September 2015), Tr. 3259-60 (self-discontinued medications and eight-week follow-up in July 2017), and Tr. 4130 (tried new medication after self-discontinuing others and eight-ten-week follow-up in July 2019)); the absence of hospitalizations (*see* Tr. 1673, 1678, and 1687, referring to Tr. 1743) or suicidal or homicidal thoughts (Tr. 1679-80, referring to Tr. 1216,

1247, and 2563); and the fact that plaintiff's condition appeared largely static—if not improved—despite several gaps in her treatment (*see, e.g.*, Tr. 1680-81, referring to Tr. 3275 (largely normal clinical findings after an approximate 18-month gap in treatment) and Tr. 4128-30 (reflecting improvement in symptoms after an approximate six-month gap in treatment)). *See* 20 C.F.R. § 404.1527(c)(4). *See also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016) (the ALJ may consider conservative treatment and the lack of emergency treatment in considering whether to discount a treating physician's opinion) (citations omitted). All of the foregoing demonstrates sufficiently specific and good reasons for the weight that ALJ Meadows assigned to Dr. Barnett's opinions.

In sum, ALJ Meadows' conclusion that Dr. Barnett's opinions were not entitled to controlling weight is supported by substantial evidence. ALJ Meadows also provided good reasons why she assigned them less weight than the other medical opinions in the record. This assignment of error should be overruled.

2. Listing 12.04

At step three, plaintiff carries the burden to show that she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, App. 1. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets all of the criteria of a listed impairment, she is disabled; otherwise, the evaluation proceeds to step four. 20 C.F.R. § 404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers*, 582 F.3d at 653 ("A claimant must satisfy all of the criteria to meet the listing.").

26

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* (citations omitted). The ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* at 641 (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Reynolds*, 424 F. App'x at 415-16 (holding that the ALJ erred by not conducting any step three evaluation of the claimant's physical impairments, when the ALJ found that the claimant had the severe impairment of back pain).

"A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks*, 544 F. App'x at 641-42). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding harmless error when a claimant could not show that he

could reasonably meet or equal a Listing's criteria).

Plaintiff argues that ALJ Meadows erred by finding that her affective disorder did not meet or equal Listing 12.04.  In particular, plaintiff argues that numerous GAF scores below 50 and the clinical observations of Drs. Lester and Barnett demonstrate that she met the B Criteria of Listing 12.04—namely, extreme limitation in "social functioning and concentration, persistence and pace."  (*See* Doc. 11 at PAGEID 4356).  The Commissioner argues in response that GAF scores do not merit significant weight.  The Commissioner also argues that ALJ Meadows discussed a number of records providing substantial support for her conclusion that plaintiff did not satisfy the B criteria, which was consistent with the opinions of the state agency file reviewers.

Listing 12.04 establishes the criteria for depressive, bipolar, and related disorders.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A), 12.04.[13]  To meet the Listing's severity level for this category of disorders, a claimant must show that she meets: (1) the impairment-specific medical criteria in paragraph A and (2) the functional limitations criteria in paragraph B or C.  The A and C criteria are not in dispute.  (*See* Doc. 17 at PAGEID 4471 & n.9).  To satisfy the paragraph B criteria for Listing 12.04, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means

---

[13] The mental disorder listings were amended effective in January 2017.  *See* Soc. Sec. Admin., *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sept. 26, 2016) (effective Jan. 17, 2017).  As it did in the context of evaluating the medical opinion evidence, the Court applies the law applicable at the time of plaintiffs' initial claims.  *See supra* nn.2 & 8.

more than moderate but less than extreme.  *Id.*, § 12.00(C).  Repeated episodes of

decompensation, each of extended duration, means three episodes within 1 year, or an average of

once every 4 months, each lasting for at least two weeks.  *Id.*, § 12.00(C)(4).

ALJ Meadows found that plaintiff was only moderately limited in her social functioning

and ability to maintain concentration, persistence, or pace.  (Tr. 1671 and 1682).  That decision

was based on substantial evidence.  As it relates to plaintiff's first argument, ALJ Meadows

placed "little weight" on plaintiff's GAF scores, noting that they are "necessarily subjective and

may contain information on financial or relationship stressors unrelated to an ability to work"

and of "little probative value."  (Tr. 1687).  There is ample authority for ALJ Meadows'

treatment of this mental health metric.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496,

511 (6th Cir. 2006) (holding that the ALJ appropriately discounted a GAF score of a physician

whose opinion had been discounted and GAF scores "have little to no bearing on [a claimant's]

social and occupational functioning"); *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415

(6th Cir. 2006) (discussing the limited utility of GAF scores in the social security context); and

*Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF scores are "not

essential to the RFC's accuracy").

Plaintiff next points to Dr. Lester's observations in 2011 of poor eye contact, failure to

smile, partial lack of cooperation, and limited recall as demonstrating that she met or equaled

Listing 12.04.  (*See* Tr. 544-546).  As discussed above, however, Dr. Lester's conclusions are

vague.  (*See* Tr. 548 (concluding that plaintiff "subjectively reports difficulty with concentration"

and temper control, her "[p]ace and persistence varied[,]" and noting that plaintiff did not report

any history of problems with coworkers or supervisors). ALJ Meadows' conclusion that plaintiff was only moderately limited in her social functioning and ability to maintain concentration, persistence, or pace was also consistent with the opinions of state agency file reviewers of the more recent claims. (*See* Tr. 1684-85, referring to Tr. 1790 (Kristen Haskins, Psy.D.) and Tr. 1825 (Jennifer Swain, Psy.D.)).

Plaintiff also points to various treatment records from Dr. Barnett reflecting plaintiff's hesitancy to speak, crying spells, anger, homicidal/suicidal thoughts, and concentration difficulties. As discussed above, while treatment records include plaintiff's reports and Dr. Barnett's observations of such symptoms, Dr. Barnett's records overall reflect relatively mild clinical observations with improvement reflected in the more recent visit notes. ALJ Meadows' decision to discount Dr. Barnett's opinions regarding plaintiff's social functioning and ability to maintain concentration, persistence, or pace was based on substantial evidence, and ALJ Meadows therefore did not err in her evaluation of the B criteria on this basis.

ALJ Meadows' decision to find plaintiff only moderately limited in social functioning and her ability to maintain concentration, persistence, or pace is supported by substantial evidence. This assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED** that plaintiff's statement of errors (Doc. 11) be **OVERRULED**, the decision of the Commissioner be **AFFIRMED,** and this case be closed on the docket of the Court.

Date: 4/18/2022

Karen L. Litkovitz
United States Magistrate Judge

30

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SABRINA T.,                                          Case No. 1:21-cv-28
      Plaintiff,                                  Cole, J.
                                                    Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).